2012 BNH 004
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 11-12411-JMD
                                                                Chapter 7
Andrew E. Bloom,
                Debtor


*Olga L. Gordon, Esq.*
*Boston, Massachusetts*
*Chapter 7 Trustee*

*Brian R. Moushegian, Esq.*
*David P. Eby, Esq.*
*Devine, Millimet & Branch, PA*
*Manchester, New Hampshire*
*Attorneys for Creditor and Former Spouse Pamela A. Bloom*

*Stephen L. Boyd, Esq.*
*Wadleigh, Starr & Peters, P.L.L.C.*
*Manchester, New Hampshire*
*Attorney for Creditors Gregory A. Raso and Kenneth J. Meyers*

## MEMORANDUM OPINION

## I.  INTRODUCTION

On June 22, 2011, Andrew E. Bloom (the "Debtor") filed a chapter 7 bankruptcy petition

in this Court.  Prepetition, on September 17, 2010, Pamela A. Bloom ("Bloom"), the Debtor's

former spouse, filed a divorce petition in state court in the 10th Circuit Court, Portsmouth

Family Division (the "Family Court").  On August 31, 2011, Bloom obtained relief from the

automatic stay in order to proceed with her divorce action and obtain a property settlement

determination in Family Court (Doc. No. 33) (the "Stay Relief Order").  The Stay Relief Order

provided that "Pamela Bloom shall seek relief from this Court before enforcing any final

property settlement or final divorce decree reached in the Divorce Proceeding, so that this Court

may determine how the pending bankruptcy proceeding may affect such enforcement or

implementation of the final divorce decree in light of the bankruptcy code and other applicable

law, and to determine the extent of the bankruptcy estate." The Stay Relief Order also provided

that the Trustee should work with Bloom to sell marital property consistent with prior Family

Court orders. On October 19, 2011, the Court entered a stipulated order (Doc. No. 93) that

confirmed Bloom had relief "to allow the court in the Divorce Proceeding to make

determinations regarding the division of, and legal and equitable rights to, marital property, but

any such determinations (through litigation or via a submitted stipulated order) shall remain

subject to this Bankruptcy Court's review prior to any distribution or enforcement" and that

Bloom should seek relief from this Court before enforcing any final property settlement or

divorce decree.

On or about February 24, 2012, after a contested evidentiary hearing, the Family Court

issued a decree of divorce, which became final on April 30, 2012 (the "Final Divorce Decree").

On May 7, 2012, Bloom filed an Amended Motion to Enforce Final Decree on Petition for

Divorce (Doc. No. 160) (the "Motion to Enforce"). Olga L. Gordon, the chapter 7 trustee (the

"Trustee"), filed a response (Doc. No. 167) (the "Trustee's Response") to the Motion to Enforce

and creditors Kenneth J. Meyers and Gregory A. Raso ("Meyers and Raso") filed a partial

objection (Doc. No. 166) (the "Meyers and Raso Objection"). The Court held a hearing on the

Motion to Enforce on June 6, 2012, and took the motion under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§

1334 and 157(a) and LR 77.4(a) of the United States District Court for the District of New

Hampshire referring any or all bankruptcy cases to this Court.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

At the time Bloom initiated the divorce proceeding in 2010, the marital estate included, among other property, a 2007 Cadillac Escalade, a 2004 Sea Ray 480 SB Yacht (the "Yacht"), a ski house in Maine, real property located in Bethel, Maine (the "Chandler Lane Property"), real property located in South Carolina, a watch collection, an IRA, proceeds in a Citizens bank account, stock, an action pending in federal court, the family home located in Greenland, New Hampshire, as well as other personal property and furnishings (collectively the "Marital Property").  Pursuant to the Stay Relief Order and other subsequent orders of this Court (Doc. Nos. 70, 74, 89, and 151), the Trustee sold the Yacht, the watch collection, and the Chandler Lane Property, with Bloom having presented objections to the sale of the Yacht and the Chandler Lane Property (Doc. Nos. 51, 52, and 137).  The Yacht was sold for $250,000.00 (Doc. No. 89). The Court authorized the Trustee to pay $2,575.21 for storage and $5,458.11 in auctioneer fees, for a total of $8,033.32, in connection with the sale of the Yacht (Doc. Nos. 116 and 117), leaving net proceeds of $241,966.68.  The watch collection was sold for $53,900.00 (Doc. No. 141).  The Court authorized the Trustee to pay $5,929.00 in expenses associated with the sale of the watch collection (Doc. No. 141), leaving net proceeds of $47,971.00.  The Chandler Lane Property was sold for $144,000.00 (Doc. No. 151).  The Court authorized the Trustee to pay ordinary closing costs and $7,200.00 for a realtor's commission associated with the sale of the property (Doc. No. 151), apparently leaving net proceeds of $131,119.30.[1]  The proceeds from

---

[1]  In the Trustee's Response, the Trustee indicates that $138,319.30 was collected from the sale of this property.  It appears that this figure does not include payment of the realtor's commission of

the sales of these assets are being held in an escrow account by the Trustee pursuant to orders of this Court.

In the Final Divorce Decree, the Family Court awarded Bloom approximately 65% of the Marital Property.  In addition to other property, she was awarded 100% of the net proceeds from the sale of the Yacht,[2] 100% of the proceeds from the sale of the watch collection,[3] and 65% of the net proceeds of the Chandler Lane Property.[4]  In her Motion to Enforce, Bloom requests that the Court review, approve, and enforce the Final Divorce Decree, and, following approval, order the Trustee to distribute the "full proceeds" from the sale of the Yacht, the watch collection, as well as 65% of the proceeds from the sale of the Chandler Lane Property, for a total of $375,165.23.[5]  She also requests that she be paid $21,162.32 representing the costs paid by the Trustee for administering these assets.[6]  She further requests that the Court order the distribution of property to her consistent with the terms of the Final Divorce Decree.

--------

$7,200.00, which would result in net proceeds of $131,119.30.

[2]  Specifically the Final Divorce Decree provides (with emphasis added):  "Wife is awarded all remaining funds held in escrow from the sale of the boat (approximately $240,855)."

[3]  Specifically the Final Divorce Decree provides (with emphasis added):  "Wife is awarded all funds from the sale of the watches (approximately $52,500) and the 'Novecento' watch.  If that watch is sold, she is awarded all net proceeds."

[4]   Specifically the Final Divorce Decree provides (with emphasis added): "To the extent permitted by the Trustee and/or the Bankruptcy Court, the undeveloped land in Bethel, Maine, is presently listed for sale.  65% of the net proceeds are awarded to the wife and 35% to the husband."

[5]  This is the amount requested in Bloom's Response in Support of Amended Motion to Enforce Decree on Petition for Divorce (Doc. No. 168) and apparently represents the entire net proceeds for the Yacht ($250,000.00 - $8,033.32) and the watch collection ($53,900.00 - $5,929.00) and 65% of the net proceeds for the Chandler Lane Property (($138,319.30 - $7,200.00) x .65).

[6]  This apparently consists of $8,033.32 for the Yacht expenses, $5,929.00 for the watch collection expenses, and $7,200.00 for the Chandler Lane Property real estate commission, which is the full amount of the real estate commission not the lesser amount of $4,680.00 that the Trustee has attributed to Bloom's 65% share of the property.

In the Trustee's Response, the Trustee states that she does not object to the Motion to Enforce.  She contends, however, that the attorneys' fees and expenses related to the Trustee's administration of property that was ultimately awarded to Bloom in the Final Divorce Decree should be deducted from the proceeds of the sale of such property before they are distributed to Bloom.  The Trustee contends that these costs, which she states consist of $27,750.36 in attorneys' fees and $18,642.32[7] in expenses that have already been paid as outlined above, should be paid by Bloom and not the bankruptcy estate.  Thus, in the Trustee's view, the Trustee should be ordered to turn over only $347,414.87[8] to Bloom.

Meyers and Raso, creditors of the Debtor, object to the Motion to Enforce to the extent that it requests a distribution of assets to Bloom free and clear of an $814,000.00 attachment that Meyers and Raso obtained prepetition against the Marital Property.  Meyers and Raso indicate that their attachment has not been avoided, released, or otherwise vacated.[9]  Meyers and Raso state that by filing their objection they seek to ensure that their attachment interests are protected.

---

[7]  This amount consists of $8,033.32 in costs related to the storage and sale of the Yacht, $5,929.00 in costs related to the sale of the watch collection, and $4,680.00 for Bloom's pro-rated share of the broker's commission related to the sale of the Chandler Lane Property.

[8]  This figure is sale proceeds of $393,807.55 less costs of $18,642.32 less the Trustee's attorneys' fees of $27,750.36.

[9]  Currently pending in this Court is an adversary proceeding against Meyers and Raso, Adv. No. 11-1103-JBH, in which the Trustee is seeking to avoid their attachment as a preference under 11 U.S.C. § 547(b).  A motion for summary judgment is scheduled to be heard in that proceeding in July 2012.  The Trustee indicated at the hearing on the Motion to Enforce that she does not believe that the action may proceed as to property that has since been awarded to Bloom, e.g., the Yacht, the watch collection, and the Chandler Lane Property.

### III.  DISCUSSION

#### A.  Legal Background

Under New Hampshire law, the filing of a divorce petition creates a marital estate.  In re Skorich, 332 B.R. 77, 83 (Bankr. D.N.H. 2005).  The marital estate is comprised of all tangible and intangible property, real or personal, belonging to either or both of the parties.  NH RSA 458:16-a(I).  The marital estate includes not only property held on the date of the divorce petition, but includes property acquired up to the date of the final divorce decree.  Holliday v. Holliday, 139 N.H. 213, 215 (1994).

After the filing of a petition for divorce, a non-owner spouse does not have legal title to marital property owned solely by the other spouse but, because a final decree could award an interest in such property to the non-owner spouse, such a spouse has an equitable interest in the property sufficient to convey standing to protect legal title to the property pending entry of a final divorce decree.  Bursey v. Town of Hudson, 143 N.H. 42, 45 (1998).  Accordingly, once a divorce petition is filed, the owner spouse retains legal title to property and, as a matter of state law, the non-owner spouse acquires a contingent equitable interest in such property pending the issuance of a final divorce decree.  Ford v. Skorich (In re Skorich), 482 F.3d 21, 24 (1st Cir. 2007).  The equitable interest of a non-owner spouse in marital property does not supercede the rights of creditors of the owner spouse during the pendency of the divorce proceeding.  Skorich, 332 B.R. at 84.  A creditor can attach marital property prior to the issuance of a final divorce decree and any interest in that property awarded in a final divorce decree is subject to such attachment.  Charter Fin., Inc. v. Aurora Graphics, Inc. (In re Jasper-O'Neil), 149 N.H. 87, 88 (2003); LeBlanc v. Berube, 141 N.H. 597, 598 (1997).

The filing of a bankruptcy petition by one of the parties in a pending divorce proceeding creates a bankruptcy estate.  11 U.S.C. § 541.  The bankruptcy estate includes all legal and equitable interests of the debtor in property, wherever located and by whomever held, as of the date of the filing of the bankruptcy petition.  Id.  To the extent that a debtor claims exemptions under applicable law, the exempt property is not property of the bankruptcy estate.  11 U.S.C. § 522(b); Taylor v. Freelander & Kronz, 503 U.S. 638 (1992).

Federal bankruptcy law provides that as of the date of the filing of a bankruptcy petition, a trustee has the status of a creditor with a judicial lien on all property of the bankruptcy estate on which a creditor could have obtained a judicial lien, whether or not such a creditor actually exists.  11 U.S.C. § 544(a)(1); Skorich, 332 B.R. at 84.  Accordingly, a trustee has the power to avoid unperfected liens and security interests in real and personal property to the extent that a judgment lien creditor could do so under applicable nonbankruptcy law.  11 U.S.C. § 544(a)(1); Skorich, 332 B.R. at 84.

In the case of Davis v. Cox, the parties were involved in a divorce proceeding prior to one of them filing a bankruptcy petition.  The issue before the court in that case was the respective rights of the debtor and the non-debtor ex-spouse to an individual retirement account, which was solely in the debtor's name when the bankruptcy petition was filed, which was claimed as exempt by the debtor, and a substantial portion of which was awarded to the non-debtor former spouse in a final divorce decree.  The First Circuit held "that where one spouse held title to marital property that, as a practical matter, was exempt from attachment, [and where case specific special equities existed], the non-owner spouse may claim to have held an undeclared beneficial interest in the property awarded by the divorce court, her interest having been held for her prior to bankruptcy upon a constructive trust by the owner-spouse until such

7

time as the divorce decree became final and the marital assets were divided." <u>Davis v. Cox</u>, 356

F.3d 76, 91 (1st Cir. 2004).  This Court has previously held that when a bankruptcy petition is

filed by one spouse after the commencement of a divorce proceeding, the nonexempt property

standing solely in the name of the debtor spouse is property of the estate, subject to

administration by the trustee.  <u>Skorich</u>, 332 B.R. at 88.  Proceeds of such property are property of

the bankruptcy estate.  <u>Id.</u>  However, exempt property is not property of the estate and, therefore,

is not subject to administration by the trustee.  <u>Id.</u> at 89.

### B.  The Final Divorce Decree

On June 22, 2011, the date the bankruptcy petition was filed in this case, the Debtor was

a party to a pending divorce proceeding in the Family Court.  On that date the Debtor and Bloom

each held legal title to assets in their respective names and, because of the pending divorce, an

individual contingent equitable interest in property, and the proceeds of property, held by the

other party.  <u>Skorich</u>, 482 F.3d at 24.  The Debtor's legal interest in property became property of

the bankruptcy estate, subject to the contingent equitable interest of Bloom.[10]

The Debtor's bankruptcy trustee, as a fiduciary for the Debtor's creditors, has the duty to

administer the assets of the bankruptcy estate, under the supervision of this Court, to provide a

return to those creditors.  The Family Court, as part of the divorce proceeding, has the authority

to determine the equitable interests of Bloom in the Marital Property, including (1) all of the

Debtor's property held on the date the bankruptcy petition was filed which comprises the

bankruptcy estate, (2) property exempted from the bankruptcy estate by the Debtor, and (3) any

---

[10]  The dispute in this case does not involve proceeds of property held in escrow pursuant to a
pre-bankruptcy Family Court order.  In that event, both parties to the divorce proceeding would have been
divested of any legal title to such proceeds and would retain only their equitable interests in the proceeds,
pending a property division in the divorce proceeding.  <u>Skorich</u>, 482 F.3d at 24.

fresh start property acquired by the Debtor after the date the bankruptcy petition was filed[11] and

before the entry of the final divorce decree.

During the course of the Debtor's bankruptcy case, the Trustee, sometimes over the

objections of Bloom, administered assets of the bankruptcy estate by liquidating them for the

purpose of providing a distribution to the Debtor's creditors.  She had the responsibility and

obligation to do so under the Bankruptcy Code.  11 U.S.C. § 704(a)(1).  This Court has the

jurisdiction and authority to authorize and approve such action by the Trustee.  28 U.S.C. §§

157(b)(1) and 1334.  The Final Divorce Decree implicitly recognized the authority of this Court

to act with respect to property of the bankruptcy estate.  The Family Court expressly provided in

the Final Divorce Decree that its property distribution was "subject to the Bankruptcy Court's

authority to determine if the property can be distributed to the parties and, if so, in what

amounts."

In the Final Divorce Decree, the Family Court awarded approximately 65% of the

Marital Property to Bloom, which was a departure from the presumption of an equal division of

marital property.  See NH RSA 458:16-a.  In awarding an unequal division of the marital estate

to Bloom, the Family Court listed thirteen reasons for doing so, including that "marital assets

were liquidated at significantly reduced prices," specifically noting that the Yacht, which was

purchased for $700,000.00, had been sold for a little more than $240,000.00 and that several

expensive watches were sold for well below their original purchase price.  In making its award,

the Family Court recognized the sale of assets by the Trustee and awarded Bloom the "net

---

[11]  Property acquired by a chapter 7 debtor after the date of the filing of the bankruptcy petition, subject to certain exceptions not involved in this case, is not property of the bankruptcy estate.  11 U.S.C. § 541(a).

proceeds."  The Family Court also credited Bloom with certain attorneys' fees and costs incurred

by her in this bankruptcy proceeding.

The Trustee does not dispute that the Final Divorce Decree issued by the Family Court

changed Bloom's equitable interests in certain property of the bankruptcy estate to legal

interests.  In the case of assets liquidated by the Trustee, the Family Court awarded Bloom the

"net proceeds" from such dispositions, subject to the authority of this Court to determine how to

distribute such property and the amount of such disposition.  Bloom seeks not only the net

proceeds of the property awarded to her by the Family Court, but also the gross selling price,

before any adjustment for costs of sale or estate expenses.  In effect, she is asking this Court to

increase the property awarded to her under the Final Divorce Decree.  This Court does not have

the authority or inclination to do so.  This Court may not review or change the terms of the Final

Divorce Decree.  "Under the Rooker-Feldman doctrine, federal courts lack jurisdiction over

federal actions that essentially invite federal courts to review and reverse unfavorable state court

judgments."  Skorich, 332 B.R. at 85 (citations omitted).  Accordingly, the Court shall order the

Trustee to distribute to Bloom the net proceeds from the sale of the Yacht, the sale of the watch

collection, and Bloom's share from the sale of the Chandler Lane Property, all as provided in the

Final Divorce Decree, in the total amount of $375,165.23.

### C.  Trustee's Request for Attorneys' Fees

The Trustee contends that the attorneys' fees she incurred with respect to her

administration of property, which was ultimately awarded to Bloom in the Final Divorce Decree,

should be deducted from the proceeds that are to be distributed to Bloom.  The amount at issue is

$27,750.36.  The Trustee argues that it would be "inequitable" for the Debtor's bankruptcy estate

to bear the burden of the fees related to the administration of property that was awarded to

Bloom, while allowing only Bloom to benefit from such administration.  In support of her

argument, the Trustee cites 11 U.S.C. § 105.

> Section 105(a) of the Bankruptcy Code provides:
>
> The court may issue any order, process, or judgment that is necessary or
> appropriate to carry out the provisions of this title. No provision of this title
> providing for the raising of an issue by a party in interest shall be construed to
> preclude the court from, sua sponte, taking any action or making any
> determination necessary or appropriate to enforce or implement court orders or
> rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (emphasis added).  Despite the apparent broad scope of the wording in § 105,

it does have limitations.

> Section 105(a) gives bankruptcy courts broad authority to exercise their equitable
> powers–where necessary and appropriate–to implement other Bankruptcy Code
> provisions.  Ameriquest Mortgage Co. v. Nosek (In re Nosek), 544 F.3d 34, 43
> (1st Cir. 2008).  This power gives considerable discretion to bankruptcy courts,
> but it is not "a roving commission to do equity."  Noonan v. Sec'y of Health &
> Human Servs. (In re Ludlow Hosp. Soc'y, Inc.), 124 F.3d 22, 27 (1st Cir. 1997).
> Thus, a court may invoke § 105(a) if the equitable remedy is necessary to
> preserve a right elsewhere provided in the Code, is consistent with the Code, and
> does not alter the Code's distribution of other substantive rights.  Bessette v.
> Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000).

U.S. Trustee v. Perrotta (In re Perrotta), 406 B.R. 1, 15-16 (Bankr. D.N.H. 2009).  Here, the

Trustee has not pointed to any other Bankruptcy Code provision that would permit the Court to

surcharge Bloom's property award.[12]

The Bankruptcy Code permits a trustee to employ professionals to assist a trustee in

carrying out the trustee's duties under the Code.  11 U.S.C. § 327.  Such a professional is entitled

---

[12]  The Trustee has cited the unpublished decision of In re O'Neil, 2010 BNH 017, in support of
her position.  While it appears that the Court did permit "fees" to be deducted from the gross sale
proceeds in that case, it is unclear whether these "fees" consisted of attorneys' fees or whether the state
court order regarding the distribution of the sale proceeds may have provided that these "fees" be paid
prior to dividing the proceeds 60-40 between the former spouse and the bankruptcy estate.  Accordingly,
the Court does not find that this case necessarily supports the Trustee's position.

to be compensated in accordance with the terms of 11 U.S.C. § 330.  Such fees may be allowed

as an administrative expense pursuant to 11 U.S.C. § 503(b)(2).  Pursuant to §§ 507 and

726(a)(1), such fees are given priority status under the Bankruptcy Code's distribution scheme.

The Court finds nothing in these Code provisions, however, to suggest that the Court may permit

the Trustee to surcharge the Marital Property under the facts and circumstances of this case.[13]

As a general rule, expenses of administration must be satisfied from assets of the estate not

subject to liens.  In re Am. Res. Mgmt. Corp., 51 B.R. 713, 719 (Bankr. D. Utah 1985).

Similarly here, the Trustee must recover her attorneys' fees from property that remains part of

the bankruptcy estate, and not from bankruptcy estate property that was awarded to Bloom in the

Final Divorce Decree, in which Bloom's equitable interest has transformed into a legal interest.

Accordingly, the Court will not reduce the distribution to Bloom by $27,750.36 as requested by

the Trustee.  There are other assets in the bankruptcy estate from which these fees could be paid

upon proper application to the Court.

### D.  Objection of Meyers and Raso

Meyers and Raso object to the Motion to Enforce to the extent that Bloom seeks to

receive a distribution of assets free and clear of the attachment that they obtained against such

assets prepetition.  They request that any order distributing proceeds from the sale of the Yacht,

---

[13]  The Court notes that the Bankruptcy Code does permit a trustee to recover the reasonable and necessary costs of preserving or disposing of bankruptcy estate property and property that is co-owned with non-debtors in certain circumstances but not in the circumstances present in this case.  11 U.S.C. §§ 363(j) and 506(c); see In re Heinze, 418 B.R. 576, 582-83 (Bankr. M.D.N.C. 2009) (suggesting that fees expended in arranging or facilitating an auction sale or the preparation of closing documents, attending a closing or otherwise facilitating the transfer of assets may be recoverable under 11 U.S.C. § 363(j) but attorneys' fees that the trustee incurred in obtaining court authorization to sell jointly-owned property free and clear of a non-debtor co-owner's interest therein were only indirectly related to the actual sale of the property in a manner too tenuous for such fees to be regarded as "costs and expenses" of the sale within the meaning of 11 U.S.C. § 363(j)).

the watch collection, and the Chandler Lane Property state specifically that the distributed assets remain subject to their attachment.  In support of their objection, Meyers and Raso indicate that their attachment has not been avoided, released, or otherwise vacated to date.

Bloom filed a response to the Meyer and Raso Objection noting that the Trustee has filed an adversary proceeding seeking to avoid Meyer and Raso's attachment as a preference and that a motion for summary judgment is currently pending in that suit which will result in the attachment being avoided if granted.  At the hearing on the Motion to Enforce, the Trustee noted that she did not believe she could continue with the pending preference action to the extent it involves property that has since been awarded to Bloom pursuant to the Final Divorce Decree.

This Court is not involved in the adversary proceeding which is pending before visiting Judge James B. Haines from the District of Maine, and, therefore, will make no comment on the merits of that suit, the pending motion for summary judgment, or its application to any liens on property interests of Bloom.  However, to the extent Meyer, Raso, and Bloom disagree as to the effect of Meyer and Raso's prepetition attachment on the award of Marital Property to Bloom, and to the extent the parties cannot resolve that issue in the pending adversary proceeding,[14] the parties will have to resolve that issue in another court as it involves a dispute between non-debtor parties over property that is no longer property of the bankruptcy estate.  Because Meyer and Raso's attachment has not been avoided, released, or otherwise vacated to date, the Court will not order a distribution of assets to Bloom free and clear of Meyer and Raso's attachment.

---

[14]  Federal Rule of Bankruptcy Procedure 7001(2) provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" must be brought as an adversary proceeding and cannot be determined in the context of a motion.

**IV.  CONCLUSION**

For the reasons set forth above, the Court will issue a separate order granting in part and

denying in part Bloom's Motion to Enforce.  Bloom is entitled to a distribution of the net

proceeds of the sale of the Yacht, the watch collection, and her 65% share of the Chandler Lane

Property, in the total amount of $375,165.23.  The Trustee is not entitled to surcharge that

distribution with the Trustee's attorneys' fees.  The Court will not order the distribution to

Bloom free and clear of Meyer and Raso's attachment.  This opinion constitutes the Court's

findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy

Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   June 20, 2012                              /s/ J. Michael Deasy
                                                   J. Michael Deasy
                                                   Bankruptcy Judge

14